If it please the Court, Counsel, it's Les Weatherhead on behalf of Novazone, the appellant and the cross-appellee. I'd like to reserve six minutes of my time, if I can, to answer the cross-appeal points made by Counsel when he's up. As to our appeal, Your Honors, the trial court entered judgment in favor of the plaintiff, Borton, in the amount of $770,000 on the jury's verdict. Two months later, at Borton's request, the trial court made a finding that that damage award had been unliquidated damages and awarded pre-judgment interest under Washington law on that judgment for the period from approximately 2005 till the date of verdict. All the issues in this appeal are questions of Washington law? Yes, Your Honor. And the parties, as to this aspect of the case, don't dispute the law. The law in Washington is very clear. A damage award is liquidated if it's either a sum certain, which this was not, or if it's a sum that is derived from a fixed, non-discretionary, non-opinion-based standard. The trial court said, two months after the verdict, that it was his recall that the parties had said, well, you take a number of boxes of apples and you take the number of boxes and the price and you do the math. Respectfully, that conclusion by the trial court, which I should add at the outset, is a question of law. Under the Icicle Foods case and the Fleur Daniels case that we cited to the court, the question whether damages are liquidated or not is viewed in Washington courts as a question of law, not a question of fact. And it appears, counsel, that you've got two different lines of cases here. You've got State v. Hopson, and then you've got, on the contrary, St. Hilaire and Kiewit-Grice, at least, where you seem to have different perspectives on what can be and what cannot be considered liquidated damages. Is that a fair assessment? With this caveat, Your Honor, those are cases from the lower, the intermediate court of appeals. Right, right. And I would say that there isn't that kind of dissonance in the Supreme Court cases. The Supreme Court of Washington has held pretty firmly to the standard that you've got to have a fixed, non-opinion-based, non-discretionary measure of damages in order to call something liquidated. And which is the case? This is not Sokolow, is it? Which is the one that you're citing for that? Well, it starts with Mall Tools, and it works all the way up through the Fleur Daniels case. Okay, all right. And we try to show that that's a pretty consistent line of thinking by the Supreme Court. And I don't deny that there is a case or two from the court of appeals that seems to deviate very slightly from that principle, but only very slightly. And I think the cause of the deviation, well, it is not a deviation to say, you know, if seller sells 10 widgets to buyer, buyer returns 4, and there's a dispute of fact over whether the buyer should have returned 0 or 2 or 4, and the jury comes back and says, well, we think 3 should have been returned and awards damages accordingly. Even though nobody knew ahead of time what the damages were going to be because you didn't know whether the measure of value was going to be 1 through 4, the Washington courts would still say that's liquidated damages. Because you had a fixed measure of value and a fixed unit, and you could apply unit price to unit and come to a fixed figure. Is it the failure to mitigate that is the controlling issue here? That's something that the jury was going to determine and that you couldn't know that in advance? I think that is a substantial... What's the difference between that and the hypothetical you just gave? What's the difference between our case and the hypothetical? In the approaches to damages taken by the two experts, the plaintiff's expert divided the apples into three sort of... No, no. The hypothetical that you just gave was where there was a question as to how many should have been returned. Right. But as long as you just plug in and do the numbers, once that's decided, it's liquidated damages. Correct. Now, what's the difference between that and our case where the... Judge Smith just asked, is it the degree of mitigation that's at issue? Because it would seem that once that's decided, it's just plugging in the numbers. Well, but it isn't just plugging in the numbers. Because to start with, the numbers were highly disputed. You had the plaintiff's expert saying... Well, plaintiff's... It was an employee, but testified as an expert, saying there's three categories of damages. There were apples that we never tried to process, and as to those, we're going to assign a value per bin. There were apples that were processed, and we had to toss out some bad apples. Those will be priced per bin. And then third, there were apples that were actually... That got into the box and sat in the warehouse for a while, and the boxes were opened, and we had to take them all out and re-box the good ones and chuck the ones that were affected by this process. So you have the defendant's expert coming in and saying, well, wait a minute. As to the first, there's no such thing as a value per bin. You have to somehow express your losses in terms of boxes of apples, because that's how they're priced and sold on the marketplace. And she says you have no documentation to support your supposition that 100% of the apples in the first category were without value. None. So she says the only value she can apply to that is a zero value. It was simply never the case, as the trial judge suggested in his order, that the parties agreed that you figure out the value of a box of apples and then count boxes. The two approaches taken by the two experts were fundamentally different. So in terms of the evidence, you know that you don't have a firm and fixed measure that both sides agreed on. I was struck by the fact that it seemed like St. Hilaire is the only one that involved apples. You know, we were quite literally talking about apples and apples. And in that case, it would, I gather, be in favor of your position. It was a state court of appeal decision. What would you say is the closest Supreme Court decision that would basically follow the same principle? Your Honor, I think they all do. I mean, I think they all say you have to have either a specific amount under a contract, and nobody has suggested anything like that here, or you have to have this, you know, it's hours of labor times hourly rate. It's units of commercial goods times market price. And that's a consistent theme throughout those cases, and none of them departs from that. Plus, you have the, I gather, I don't know if it's a presumption or whatever, but there's this concept that this is a favored thing in Washington law, that you have prejudgment interest. And how does that factor into our analysis here? Your Honor, the reason it's favored is explained in one of the cases, and we cited, and I can't come up with the citation as I'm standing here, let alone the author, but the court said that the reason for our rule is that if somebody owes somebody else money and doesn't pay it over, they ought to pay interest on the money that they withheld. But in the same paragraph, the court says, however, if a defendant can't tell what it isn't any fixed measure of damages, then it's not fair to expect defendants to pay damages on a contested amount. And so in this case, you've got sort of three things that we say affect the court's ruling and undercut it. Number one is the evidence. It is the conflict between the approaches taken by the two experts. It simply does not square with the court's holding that there was general agreement about the measure of damages. Number two, it's the instructions. The court instructed the jury that it didn't have to come up with a verdict to any mathematical certainty. It gave it kind of a classic black box jury instruction. You do whatever's fair and reasonable to compensate the plaintiff. You do not have to come up with mathematical certainty. There just has to be evidence in support of your view. That instruction, which the jury is presumed to have followed, told them to use their discretion and their judgment in arriving not only at the damage amount, but also the offset and the loss amount. And so the third thing is the verdict itself. And it's there, Your Honor, where I would say mitigation is relevant because the jury had absolutely no mathematical standard given to it by any witness or the court to tell it how to do the mitigation analysis. It simply did it on the basis of... Does the black box jury instruction argue in favor of these not being liquidated damages because you really don't know what the jury relied upon? There is no certainty to it, particularly when you add the mitigation component to it? Yes, Your Honor. It's an instruction to the jury, do what's reasonable, which in my mind is a classic jury function of using its discretion and judgment to do what's fair. If you back it out, if you were to say at the beginning, before you ever went to a trial, okay, we agree you were at fault. We want to pay you liquidated damages. Would there be any way to determine what those were, absent a jury involvement of this nature? Because you have some widely disparate views of experts. No, Your Honor. There was no agreement on how to measure damages in the case. It took the jury's discretionary... You have a half a minute before you get to your five you want to save. Let me ask you one question. What's the standard of review of the district court's ruling? Awards of prejudgment interest are reviewed for abuse of discretion, but under Washington law, whether or not this was liquidated damages is a question of pure law. And so if the court misapprehended or misapplied the law, then it perforce abused its discretion. So it's effectively a de novo standard, the way I look at it, Your Honor.  Thank you, Your Honors. May it please the court, Jay Carroll on behalf of Bortman & Sons. I don't think I'm going to cite any cases that anybody here authored. That's very unlikely. Very wise. But I do have to confess that I was both trial counsel and appellate counsel on the St. Hilaire case, so there, I've confessed. Don't tell us. You think that because they're both about apples, it tells us a lot? It does not. It is very distinguishable. Oh, you're talking about apples and oranges, then? That's right. Actually, there was cherries involved in both cases. Apples and cherries, oh. I'm going to start first with the Borton appeal points with respect to the award of attorney's fees or the lack of an award of attorney's fees in this case. The standard of review in that is a de novo. It's a question of law. It is, are attorney's fees authorized either by contract, statute, or recognized ground in equity? And in this case, the clear question is whether or not it's a combination of contract and statute. Again, I think counsel is correct. There is a line of cases that starts with the Herzog case that talks about the concept of, can a party where a contract has been disavowed, has been nullified, can that party who successfully makes that argument avail itself or himself of the attorney's fees? And the Herzog case did that in combination with RCW 4.84.330 because it had to in that case because it was a unilateral contract fee. It said, it didn't say prevailing party, it said plaintiff or defendant gets it. So it had to mesh that statute with the contract. And in that case, the contract failed for a lack of a meeting of the minds. The parties came together and it dealt with the purchase of some windows. And they eventually came to a dispute with respect to what the payment terms were going to be. And the defendant in that case argued that there wasn't a contract because the parties had a failure of meeting of the minds. And therefore, the plaintiff wasn't entitled to any money. He was successful, or it was successful on that point. Counsel, as I look at these cases, again, you've got two lines of arguments. And it seems like one goes on the Herzog approach where if you've got mutual mistake, statute of limitations, and so on, then you can collect them under certain circumstances. The other line seems to suggest that if the party's never intended to form a Is that a fair reading of the cases? There is only the one case, the Wallace case, that talks about this intent issue, which is a Division II from the Court of Appeals of Washington. As I pointed out, Yakima, the eastern district where we're at, happens to be in Division III. Capital of the world. Capital of the world happens to be in Division III. Division III has very clearly adopted the Herzog rationale. And absent that, the Wallace case is distinguishable because you can just add what happened here to the laundry list that the Wallace case talks about. Because it talks about the, I don't know how to say it, the Wan versus Chow case. There couldn't be a more clear, that was the statute of limitations one. But it was where Wan sued Chow under a promissory note. Chow third-partied in Tam, and then Wan made a direct claim against Tam on the promissory note. Now that claim failed by virtue of a statute of limitations argument. But Tam was allowed to collect attorney's fees under that promissory note, even though he didn't sign it. Let me ask you, in this case, is it your view that the parties intended to have a contract? Absolutely. So from your perspective, either Wallace or Herzog, you come out ahead, assuming there is a liquidated damage involved. Correct. Well, go ahead, Anthony. I think you mixed the, assuming that there's an attorney's fee clause, which there is. Right, right. Right. Well, if a contract was intended and assuming there was an attorney fee clause in it, then you go from there. Correct. That's absolutely right, Your Honor. And there isn't any question that a contract was intended in this case. And in fact, it was, quite frankly, it was Borton's position that it was an oral contract. Well, there was an agreement of some sort that they were going to take these apples and treat them. But could you just explain to me, in simple language, why it's fair if your out from under provisions of the written contract that you should be able to take advantage of the written attorney fee provision in the contract? I think that the case law that you discussed. I didn't ask you about the case law. I just asked you why it's fair, fair result. Because it goes both ways. There is no question that had the jury returned a verdict and said that Craig Anderson had apparent authority to sign that contract on behalf of Borton, that NovaZone would have requested attorney's fees based on that. There's no question they would have. And there's no question they would have been entitled to it. What Herzog and all the other cases say, if it goes one way, what's good for the goose is good for the gander. If one side is going to get the spoils of that contract provision, the other side should as well, even if they come in and defend the action. I don't understand. Are you saying that if there's a contract, one side would be entitled to it, whoever won? And if there's no contract, nobody would get it. I don't see what... If there's no contract, then he's saying that you also get fees, which doesn't make sense. But that's what Washington says. That's what Washington says. Reid Herzog and Juan and all those cases we cited to you, it's what it says. And conceptually, it's based on, again, that melding of RCW 4.84330 with the contract. And it's a similar argument to the reason 4.84330 exists, which is a unilateral contract provision. It's talking about if the contract says only one side, only in this instance, if NovaZone, if that language had said, in the event of a dispute, NovaZone gets their attorney's fees. And that's all the contract said. 4.84330 was designed to alleviate that problem because the legislature said, wait a minute, that's not fair. You can't have a contract provision that only allows one party to get the fees. It has to go... That's an orange rather than an apple, but a different situation. I don't understand. It says if you have a contract, each side should have the same right. But it doesn't say if you don't have a contract that you should be able to get attorney's fees on the basis that you would if you did have a contract. I don't understand that either. But that's how the Herzog Court bootstrapped that argument in, is to utilize, again, RCW 4.84330 and say, you know, this is, it's not, it ain't fair. Do you want to go to the other part of this? Yes, I'm sorry. On the prejudgment interest, I have a little dispute on what the standard of review is because, and I said this in the brief, I think NovaZone and counsel are kind of paying lip service to what the standard is. It's an abuse of discretion standard. I understand the concept of what he's saying, which is... It includes an error of law. Don't look at me, look at the Supreme Court. It can include an error of law, but the error of law did not occur in this case because Judge Shea applied the correct standard. He didn't do an error of law when he did his analysis with respect. He decided whether or not this was a liquidated or an unliquidated claim. He did the analysis. I want to be sure of one thing. I thought that Wharton and Sons repudiated the contract on the basis that it was never intended by an authorized agent. Is that correct? Correct. They defended the written contract that NovaZone... Which is where the attorney fee clause was included, right? Correct. That's correct, Your Honor. They repudiated it on the basis that it was never intended, there was no authorized agent to sign it. That no authorized agent signed that contract. Right, and that's the one where the attorney fee clause is included. Correct. So your side says, never intended to sign that contract. You didn't say that your client never intended to have a contract. They didn't intend to have this man sign this contract. That's correct, Your Honor. And that's the only contract where the attorney fee clause was included because there was never any contention, I don't think, and correct me if I'm wrong, that in any alleged oral contract that there was an attorney fee clause. That's correct. Okay, so if there is one, it's in this written contract, your side repudiated that on the basis it was never authorized, never intended to enter it. What about the other side? Did they repudiate it as well? No. So what happens then if one intended a contract and the other one didn't intend a contract? Well, but we did intend a contract. I mean this contract. That contract. Because we're now talking about attorney fees. Correct. The only alleged contract where there was an attorney fee clause was this written contract. Your side repudiated it. What did the other side do with respect to the written contract? They sued on it. Or excuse me, they defended it as an affirmative defense. They asserted the waiver and disclaimer language that was contained within that contract. So they relied upon the contract. They did not disclaim an intent to enter the contract, right? Correct. And sought attorney fees. Because the contract is written, you wouldn't have been able to prevail on this if those clauses were there. Well, we had other defenses to the disclaimer and the warranty issues. I mean, so we had. Was it harder? Of course not. Okay. Well, it would have presented challenges, Your Honor. But to get back to the prejudgment interest, Judge Smith, you asked which Washington Supreme Court case, and I don't know why we got all the weird names one, but it's the Scocola case, which is a 158 Washington 2nd, 506. That, I respectfully submit, is the latest and most prominent analysis of exactly what we're faced with here. You had a plaintiff asking for $935,000. You had the defendant saying it should be $364,000. And the jury coming back saying it should be $425,000. And the court very clearly in its analysis there said it's not a function of do you dispute the amounts that are involved. Again, prejudgment interest goes back to the measure and the method. Well, your adversary says that your experts had totally different theories. That's not true. Okay. Would you explain that? In the first, and I'll take them. In the first one, the analysis was there was 2,575 bins of fruit that we didn't run. They were injured so badly that we just sent them to the processor. We ascribed a per bin value based upon a control sample that we had of other fruit. And there was X amount per bin times the bin less the packing charges we didn't incur than plus the processor. At trial, their expert had nothing to say about that other than she was going to put a zero value on that because we didn't have in her mind what proper documentation was on that. That's the testimony at trial. The second thing that counsel raises in his brief, and I'm going to have to talk really quick, is a storage fee of $74,000. That was a simple mathematical computation of 2,575 bins times $25 a bin to get to your $74,000. The last thing that they complain about in their brief was what we call the repack, where we actually pack the boxes of apples and then discovered that there was problems with them and then had to repack those apples. And by doing that, you get shrink. You lose apples that you have to throw away. Again, the methodology of the damage computation wasn't at issue. What was at issue was the defendant's expert didn't think that we should have included, because in essence we said every apple we lost was due to the ozone damage, and she didn't think that that was appropriate. It should have been a lesser amount. We said 100%. She says it should have been, I don't know, 6% or 7%. But it wasn't the methodology. It was just a disagreement as to the amount. And now I am truly out of time. Thank you very much. Your Honors, the first thing I need to do in respect of the attorney's fee issue is correct an error in my brief. When I was reviewing the cases in preparation, I discovered to my, I'm aghast to say, that a case that I cited to the court, Mount Joy against Bayfield, and that's cited at page 15 of our brief and page 5 of our response to their motion, is an unpublished decision. And I didn't recognize that when I drafted our papers. In the first instance, I pulled it off the computer rather than out of the books and didn't see the bug. So I have to withdraw reliance on Mount Joy. Well, you can cite them, but it's not precedential. I think actually under Washington rules it can't be cited. Under Washington rules you can't cite them at all. Aside from that, your opponent mentioned something that is, I think, rather important here, and that is that while they repudiated the contract based upon an unauthorized agent, that in fact you relied upon the contract that you intended that contract to be enforceable. Is that correct? Yes, that is correct, Your Honor. So any case law respecting the attorney fees that indicated that both sides, neither side intended to enter into the contract would not be applicable here? I'm not sure that you can read Wallace against Kuhner that broadly, Your Honor. I hadn't really thought about it in those terms, so I don't know. But on rereading it would seem to me important to ask whether it says that there was an absence of mutuality. Well, Wallace is the only one that seems to say that if neither side intended the contract, you don't get attorney fees. All the others sort of get attorney fees, even though there are statutes of limitations and other issues. And it seems to me that if you are agreeing that you intended the contract, you don't get to take advantage of Wallace. You're stuck with these other cases. Only if Wallace means, as counsel says, that there has to be a mutual absence of intent. And I don't know that that's what Wallace says. I have to check that. At least that's, I'm going to reread it, but that's my impression. All the other cases seem to say, you know, if at least one of the parties intends that there be a contract, under these circumstances that you can, you know, you're going to get the attorney fee clause kicking in. The way I read Wallace, and subject to your reading obviously, is I read Wallace to say that the other cases involved mutual intent to enter into a contract, but that there were other technical defenses to the validity or enforceability of the contract. Yeah, and that's a separate issue. I'm just talking about which cases. But my point is that it's the mutuality of intent, not necessarily enforceable if one person had intent and the other didn't. And it is clear on this record that John Borton said, Yeah, there's no question that Borton said, no, it didn't, but your folks did. I don't dispute that, Your Honor. Secondly, I think the court has to look at where the right to recover fees is located as a legal proposition, because originally Borton went to the court and said, you know, we request these attorney's fees under the Herzog principle. Well, Herzog and the statute on which it was originally based, 484.330, say that there has to be an action on a contract. That's specific in the statute, and it's specific in Herzog. And Judge Whaley said, well, wait a minute. There wasn't an action on that contract. There was no action on it. There was no counterclaim. So you lose. Borton went back on reconsideration and said, well, wait a minute. The statute doesn't apply. The statute doesn't apply because by its terms it only applies to unilateral, not bilateral fee agreements. So, therefore, disregard the statute. Its limitations don't limit your duty to give us fees in these circumstances. So on the second go-around, the trial court said, okay, then what you must be talking about is the equitable principle that underlies the Herzog rule. And at least three Washington courts of appeals in published cases, aside from the unpublished one that I erroneously cited, have said this is an equitable basis for an award of fees. The court cited one of them, which is Kaint's. So on reconsideration, the court says, okay, I will assume that your authority is not the statute and thus not subject to the limitations of the statute requiring there to be an action on a contract, and I'll apply equity. And he says, based on equity, I find four reasons why your claim is not equitable. One of them was Wallace against Kuhner because there was no mutual intent to contract. One was that Borton was a plaintiff. Borton was the party that had brought suit. Third was in the typical context, what happens is a defendant gets sued and there's an assertion against that defendant that you are liable on this contract. And if that assertion were to prevail, the plaintiff would ask for and be entitled to fees. The defendant defends, and among his defenses, or perhaps as a sole defense, he wins based on the idea that the contract was invalid or unenforceable. That's where the mutuality of remedy comes in, and Judge Whaley thought it wasn't really applicable. Where you selected an oral contract to sue on, you disavowed the written contract that would have been in your road. You can't now reselect into that contract as an equitable principle. Fourth, Borton sought all of its fees for the lawsuit. It didn't try to segregate its fees and say we had to defend against the defense. It wanted all of its fees for the entire case, and Judge Whaley thought that was inequitable. Unless the Court has any further questions, I see I'm over time. Thank you very much. Thank you. The case just argued will be submitted. The Court will stand in recess for the day.
judges: Schroeder, Reinhardt, Smith